UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **BALBIR SINGH,** | } |
| Petitioner, | } |
| v. | } Case No.: 4:17-cv-01793-RDP-JHE |
| **JEFF SESSIONS, ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA, et al.,** | } |
| Respondents. | } |

## MEMORANDUM OPINION

This matter is before the court on Petitioner's Petition for Writ of Habeas Corpus. (Doc. # 1). In response to the court's Show Cause Order (Doc. # 3), the Government filed a brief seeking dismissal of Petitioner's 28 U.S.C. § 2241 Petition on December 4, 2017. (Doc. # 7). On December 29, 2017, Petitioner responded to the Government's request for dismissal. (Doc. # 9). After careful review, and for the reasons explained below, the court concludes that the Petition (Doc. # 1) is due to be denied.

### I. Background

Petitioner is a native and citizen of India. (Doc. # 7-1 at ¶ 4). He entered the United States in New York at an unknown time. (*Id.* at ¶ 5). On August 13, 1983, the Los Angeles, California Police Department arrested Petitioner for murder. (*Id.* at ¶ 6). Petitioner was convicted of murder and sentenced to sixteen years to life in prison on April 12, 1994. (*Id.* at ¶ 7). On May 31, 1994, Immigrations and Customs Enforcement ("ICE") placed a detainer on Petitioner at Wasco State Prison/Reception Center. (*Id.* at ¶ 8). On January 10, 2010, an ICE

agent interviewed Petitioner at San Quentin State Prison in California, and Petitioner received an immigration detainer.  (*Id.* at ¶ 10).

On September 23, 2016, Petitioner was turned over to ICE custody and served an I-851 Notice of Intent to Issue a Final Administrative Removal Order and Final Administrative Removal Order.  (*Id.* at ¶ 12).  At that point, Petitioner expressed fear of returning to India.  (*Id.*). On October 6, 2016, Petitioner had a reasonable fear interview but received a negative decision. (*Id.* at ¶ 14).  Petitioner requested review of this decision.  (*Id.*).  On October 21, 2016, an Immigration Judge found that Petitioner had not established that there was a possibility of persecution or torture if he returned to India.  (*Id.* at ¶ 16).

Petitioner's travel document request was submitted to the Indian Consulate on November 8, 2016.  (*Id.* at ¶ 18).  On November 25, 2016, Petitioner filed a Petition File Review with Stay with the Ninth Circuit Court of Appeals.  (*Id.* at ¶ 19).  Petitioner was transferred to the Etowah County Detention Center, where he is currently being detained, on March 8, 2017.  (*Id.* at ¶ 20). On April 19, 2017, the Ninth Circuit denied Petitioner's Stay of Removal; however, his petition (Docket Number 16-73683) remains pending.  (Docs. # 1 at p. 2; 7-1 at ¶ 22; 9 at p. 1).  On July 17, 2017, Petitioner was afforded an initial Post Order Custody Review, which authorized his continued detention.  (Doc. # 7-1 at ¶¶ 27-28).

Through the Affidavit of Bryan Pitman, a Supervisory Detention and Deportation Officer with ICE, the Government alleges that Petitioner has taken actions to delay his removal.  (Docs. # 7, 7-1).  Specifically, the Government states that Petitioner has been evasive regarding his birth certificate, passport, and whereabouts of his family members and he has returned (and continues to return) an incomplete travel document application to case officers.  (Doc. # 7-1 at ¶¶ 18, 24-25).  Petitioner counters that he has complied with ICE to the best of his ability.  (Doc. # 9 at p.

3). He explains that he does not have a birth certificate or passport and does not have anyone's phone number in India (because he has not been there in decades) so he cannot produce these documents or information to ICE. (*Id.*). On July 20, 2017, Petitioner was placed into failure to comply status. (Doc. # 7-1 at ¶ 28).

**II.	Analysis**

The Attorney General is required to detain an alien during the removal period. 8 U.S.C. § 1231(a)(2). The ninety-day removal period begins to run on the latest date of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at § 1231(a)(1)(B). An alien's removal order becomes administratively final "[u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R. § 1241.1(a). Thus, Petitioner's removal order was administratively final at the latest on April 19, 2017, when the Ninth Circuit denied his Stay of Removal. (Docs. # 1 at p. 2; 7-1 at ¶ 22; 9 at p. 1); *see Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 n.5 (9th Cir. 2008) (explaining that "if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review").

If removal cannot be accomplished within the removal period, the Government may detain a removable alien beyond the ninety-day removal period. 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court addressed whether 8 U.S.C. § 1231(a)(6) "authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period

3

*reasonably necessary* to secure the alien's removal." 533 U.S. at 682 (emphases in original). In order to avoid serious constitutional concerns about indefinite detention of aliens awaiting repatriation, the Supreme Court interpreted § 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* "The constitutionally acceptable rationale for detention awaiting removal is that it assures that the alien will be present and not flee prior to his removal from the United States." *Francis v. Holder*, 2015 WL 4911731, at *5 (N.D. Ala. July 15, 2015), *adopted in relevant part*, 2015 WL 4911535 (N.D. Ala. Aug. 17, 2015). "When there is no significant likelihood in the reasonably foreseeable future that such removal will actually occur, the detention serves no constitutional or legal purpose." *Id.* The Supreme Court has established a presumptively reasonable period of detention for six months following the entry of a final order of removal. *Zadvydas*, 533 U.S. at 701. Thereafter, if a detainee can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut that showing with evidence that the detainee likely will be repatriated in the "reasonably foreseeable future." *Id.*

Under Eleventh Circuit precedent, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). "Circuit precedent, therefore, requires some *prima facie* showing by the petitioner that he is not likely to be removed within the reasonably foreseeable future." *Francis*, 2015 WL 4911731, at *5. "Without that additional showing (more than simply being detained for six months), a petitioner is not entitled to § 2241 relief." *Id.*

A detainee's statutory period of detention can be extended if the detainee acts to prevent his removal or fails to cooperate in good faith with the procurement of travel documents. *See* 8 U.S.C. § 1231(a)(1)(C); *Akinwale*, 287 F.3d at 1052 n.4. "Accordingly, the statute expressly permits an alien to be detained longer than the presumptive removal period, where the alien acts or conspires to prevent his removal." *Rodriguez v. Gonzales*, 2007 WL 1655604, at *5 (N.D. Fla. June 4, 2007). "Therefore, in considering whether there appears to be no significant likelihood of Petitioner's removal in the reasonably foreseeable future, the Court must consider whether Petitioner's removal has been delayed or extended by Petitioner's own efforts." *Id.* When a detainee obstructs his removal by causing a disturbance that prevents ICE from repatriating him, that detainee is not entitled to relief under *Zadvydas* if his "non-cooperation is the only barrier to his removal." *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 896-97 (11th Cir. 2012).

Here, the court finds that Petitioner is not entitled to relief under *Zadvydas* because he has not presented a good reason to believe that his removal is significantly unlikely in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1052. The Government has averred -- and the fact that the Government of India has not declined to issue travel documents in Petitioner's case demonstrates that -- Petitioner's removal will be possible and will occur in the reasonably foreseeable future. (Doc. # 7-1 at ¶ 31). Petitioner remains in custody in this country for one main reason: the Indian Consulate has been unable to issue him a travel document because Petitioner has failed to provide ICE with a complete and accurate travel document application. (*Id.* at ¶¶ 24-25, 29). Furthermore, Petitioner's lack of cooperation with ICE has caused him to be placed into a failure to comply status. (*Id.* at ¶ 28). Because Petitioner has acted to prevent

his removal, he is not entitled to habeas relief under *Zadvydas*. *See Oladokun*, 479 F. App'x at 896-97; *Rodriguez*, 2007 WL 1655604, at *5.

Petitioner also appears to raise freestanding due process challenges to his continued detention. (Doc. # 1 at p. 7). Petitioner has failed to provide any evidence that his detention has been contrary to the standards of substantive and procedural due process. In fact, the procedural background of Petitioner's detention points to just the opposite conclusion as he has been afforded administrative appeals, an asylum review, and a Post Order Custody Review. (Doc. # 7-1 at ¶¶ 13-17, 19, 26-28, 30). Additionally, these due process claims fail to present a constitutional defect because Petitioner's non-cooperative conduct has extended the statutory removal period, and there is a significant likelihood that Petitioner will be removed once his obstruction of removal ceases. *See Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885, 887 (11th Cir. 2015). Accordingly, Petitioner's due process claims fail.

### III. Conclusion

For the reasons explained above, Petitioner's claim for habeas relief is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this May 7, 2018.

                                                   **R. DAVID PROCTOR**
                                                   UNITED STATES DISTRICT JUDGE